IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 4, 2018 Session

## IN RE: NEVAEH N.

**Appeal from the Chancery Court for Hawkins County**
**No. 2017-AD-26    Douglas T. Jenkins, Chancellor**

_____

**No. E2018-00770-COA-R3-PT**

_____

Mother and Father jointly appeal from the order terminating their parental rights as to their minor child based upon the statutory ground of abandonment by willful failure to support, as well as a finding that termination was in the child's best interest. Because we conclude that Petitioners/Appellees failed to show by clear and convincing evidence that Mother and Father willfully failed to support the child, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

J. STEVEN STAFFORD, P. J., W.S., delivered the opinion of the court, in which D. Michael Swiney, C.J., and THOMAS R. FRIERSON, II, J., joined.

Amy Kathleen Skelton and William E. Phillips, II, Rogersville, Tennessee, for the appellants, Christine N., and Bradley N.

Michelle G. Green, Rogersville, Tennessee, for the appellees, Katrina H., and Scotty H.

### MEMORANDUM OPINION[1]

### Background

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

This is a termination of parental rights case in which the parents, Christine N. ("Mother") and Bradley N. ("Father" or, together with Mother, "Parents" or "Appellants") jointly appeal from the order of the Hawkins County Chancery Court ("trial court") terminating their parental rights to their minor child, Nevaeh N.[2] The minor child was born in September of 2012,[3] and was removed from the custody of her Mother and Father in February of 2016 after relatives of Appellants filed a petition to transfer temporary legal custody in the Hawkins County Juvenile Court. The basis of this emergency petition was a car accident that occurred on or about February 18, 2016; the petition alleged that both Appellants were under the influence of illegal drugs and that Mother wrecked the family's van as a result. Nevaeh and another child were injured in the accident.

In granting the petition, the trial court awarded temporary custody of the child to Louelle B., the child's great aunt ("Great Aunt"). The child was thereafter adjudicated dependent and neglected on April 26, 2016. While Nevaeh was technically under the legal custody of Great Aunt, she allowed other relatives of Appellants, Katrina H. and Scotty H. ("Appellees" or "Petitioners") to take physical custody of Nevaeh. Appellees cared for Nevaeh and maintained physical custody of the child since that time.

Appellees sought to have legal custody of the child transferred from Great Aunt to themselves by filing a petition for custody on July 26, 2017. Meanwhile, on July 31, 2017, Father filed a motion with the trial court requesting that he and Mother's supervised visitation be changed to unsupervised visitation. The motion alleged that he and Mother were drug-free and had obtained safe, stable housing. Before the trial court could hear Father's motion, the trial court entered an order transferring custody of the child to Appellees on August 3, 2017.[4] The very next day, August 4, 2017, Appellees filed their petition for adoption of a related child, as well as a petition for termination of Appellants' parental rights. As such, all other proceedings related to the child were held in abeyance pending adjudication of the termination and adoption petition.

The petition for termination alleged that Appellants' parental rights should be terminated based upon four statutory grounds: (1) abandonment by willful failure to visit; (2) abandonment by willful failure to support; (3) persistence of conditions; and (4) wanton disregard for the welfare of the minor child. Appellees further alleged that termination was in the best interests of the child. The matter proceeded to trial on March 13, 2018. At the outset, Appellants' counsel raised the issue of whether Appellees were

---

[2] In cases involving termination of parental rights, it is the policy of this Court to remove the names of minor children and other parties in order to protect their identities.

[3] Some portions of the record indicate that the child was born in September 2012, while others indicate she was born in September 2011.

[4] In the record, this order is referred to as a "consent order." We note, however, that Parents did not consent to the transfer of custody; rather, only Great Aunt and Appellees signed the order.

required to have a home study conducted before the matter could proceed; however, the trial court did not rule on this issue and proceeded with the termination hearing.[5]

The proof at trial demonstrated that although the child had been in Appellees' custody, Mother and Father maintained at least some contact with the child and had been making strides to improve the conditions that necessitated Nevaeh's removal. In particular, Mother and Father had been living in an apartment and staying current on the rent for more than seven months. Mother had been to a rehabilitation program and completed her recommended follow-up treatment, including six months of therapy. Mother was having success with Subutex[6] therapy, and testified that she was looking for a job while currently unemployed. In order to make money, Mother testified that she would sometimes babysit her young niece and that she might earn anywhere from $100.00-$120.00 a week caring for that child.

Likewise, Father was unemployed but was receiving disability benefits in the amount of $700.00 per month. The evidence reflects that Father suffers from a degenerative eye disease that runs in his family. With regard to expenses, Mother testified that their rent was $600.00 a month, including utilities, and that they spent approximately $420.00 a month on Mother's Subutex therapy, which is not covered by insurance. In addition, Mother testified that both parents receive food stamps, $192.00 per month to Mother and $115.00 per month to Father. Moreover, Mother maintained that she and Father had resolved all of their legal issues and were both off probation. As such, Mother's overall contention was that she and Father had made significant progress since Nevaeh's removal, and Mother maintained that both she and Father wanted to remain involved in the child's life.

The trial court also heard testimony from Appellee Katrina H., who testified that the primary reason she feels that Appellants are unable to care for Nevaeh is the risk that they will eventually begin using drugs again. With regard to Appellants' alleged failure to visit the child, Katrina H. testified that she received requests from Mother to visit the child approximately three times during the relevant four month period, but that none of these visits came to fruition because of various scheduling problems. Moreover, Katrina H. testified that she never received any child support from Appellants in the time Katrina H. has cared for Nevaeh, nor has Katrina H. received any form of in-kind support or

---

[5] Appellees asserted in their petition that because they are related to the child, the home study requirement should be waived. See Tenn. Code Ann. 36-1-116(a)(1). Appellants contended that the home study requirement could not be waived because Katrina H. is the second cousin of the child, and therefore not "related" as provided for in Tenn. Code Ann. § 36-1-102. As discussed *infra*, we need not reach this issue on appeal and express no opinion as to either party's argument.

[6] Subutex is "an opiate substitute" that can be used as "a medication for withdrawals." *See **State v. Gentry***, No. E2015-01738-CCA-R3-CD, 2016 WL 3078721, at *3 (Tenn. Crim. App. May 23, 2016); ***State v. Beason***, No. E2008-02831-CCA-R3-CD, 2010 WL 1508522, at *3 (Tenn. Crim. App. Apr. 15, 2010).

necessities for the child. While Katrina H. acknowledged that Father suffers from a degenerative eye-disease that renders him disabled, Katrina H. also testified that Father has held jobs in the past and that she did not believe Father is completely unable to work. Katrina H. was adamant that while she cares for Mother and Father, Appellees are better equipped to raise Nevaeh.

At the close of testimony, the trial court orally ruled that the Appellees failed to satisfy their burden in proving the statutory grounds of persistence of conditions and willful failure to visit the child.[7] In so ruling, the trial court acknowledged that most, if not all, of the conditions necessitating Nevaeh's removal had been rectified, and that Appellants had petitioned the court for unsupervised visitation just before the petition for adoption was filed. As such, the trial court found that clear and convincing evidence did not support a finding of persistence of conditions or willful failure to visit. However, the trial court went on to conclude that clear and convincing evidence did support the allegation that Appellants willfully failed to support the child and that termination of both parents' parental rights was in Nevaeh's best interest. The trial court also granted Appellees' request to be named the child's guardian. On April 4, 2018, the trial court filed its written order, and Mother and Father thereafter filed a timely notice of appeal to this Court.

## Issues Presented

The following issues have been taken from Appellants' brief and restated slightly:

1. Whether the trial court erred in proceeding with trial without first requiring Appellees to have a preliminary home study done, as Appellees are not statutorily "related" to the child.
2. Whether the trial court erred in granting Appellees' petition to be named the child's guardian without first requiring Appellees to have a preliminary home study done.
3. Whether the trial court erred in concluding that clear and convincing evidence supported the finding that Mother and Father abandoned the child by willful failure to support.

---

[7] During trial, Appellees withdrew the allegation of abandonment by wanton disregard for the welfare of the child, presumably because neither parent was incarcerated at the time the termination petition was filed or in the four months preceding its filing, as required to prove this ground for termination. *See* Tenn. Code Ann. § 36-1-102(1)(A)(iv) (providing that the ground of abandonment may be found when "[a] parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.").

4. Whether the trial court erred in concluding that clear and convincing evidence supported the finding that termination of Mother and Father's parental rights was in the best interests of the child.

### Standard of Review

The Tennessee Supreme Court has explained that:

A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. ***Troxel v. Granville***, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); ***Stanley v. Illinois***, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); ***In re Angela E.***, 303 S.W.3d 240, 250 (Tenn. 2010); ***In re Adoption of Female Child***, 896 S.W.2d 546, 547–48 (Tenn. 1995); ***Hawk v. Hawk***, 855 S.W.2d 573, 578–79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. ***In re Angela E.***, 303 S.W.3d at 250. "'[T]he [S]tate as parens patriae has a special duty to protect minors. . . .' Tennessee law, thus, upholds the [S]tate's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child." ***Hawk***, 855 S.W.2d at 580 (quoting ***In re Hamilton***, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also* ***Santosky v. Kramer***, 455 U.S. 745, 747, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); ***In re Angela E.***, 303 S.W.3d at 250.

***In re Carrington H.***, 483 S.W.3d 507, 522–23 (Tenn. 2016) (footnote omitted). In Tennessee, termination of parental rights is governed by statute which identifies "'situations in which that state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" ***In re Jacobe M.J.***, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting ***In re W.B.***, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). Thus, a party seeking to terminate a parent's rights must prove (1) existence of one of the statutory grounds and (2) that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); ***In re D.L.B.***, 118 S.W.3d 360, 367 (Tenn. 2003); ***In re Valentine***, 79 S.W.3d 539, 546 (Tenn. 2002).

Considering the fundamental nature of a parent's rights, and the serious consequences that stem from termination of those rights, a higher standard of proof is required in determining termination cases. ***Santosky***, 455 U.S. at 769. As such, a party must prove statutory grounds and the child's best interest by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c); ***In re Valentine***, 79 S.W. 3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the

conclusions drawn from evidence[,]" and "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In termination cases, appellate courts review a trial court's factual findings de novo and accord these findings a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Carrington H.*, 483 S.W.3d at 523–24 (citing *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010); *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007)). Our supreme court further explains:

> The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d at 524.

Lastly, in the event that the "resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues." *In re Navada N.*, 498 S.W.3d 579, 591 (Tenn. Ct. App. 2016) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997)). This Court therefore "gives great weight to the credibility accorded to a particular witness by the trial court." *In re Christopher J.*, No. W2016-02149-COA-R3-PT, 2017 WL 5992359, at *3 (Tenn. Ct. App. Dec. 4, 2017) (citing *Whitaker*, 957 S.W.2d at 837).

### Discussion

As we perceive it, the central issue in the case at bar is whether the trial court erred in terminating Appellants' parental rights on the basis of abandonment by willful failure to support to the child. As such, we begin with a discussion of the law on this statutory ground for termination.

Abandonment is a statutory ground for termination of parental rights. Tenn. Code Ann. § 36-1-113(g)(1). For purposes of this appeal, Tennessee Code Annotated section 36-1-102 defines "abandonment," in relevant part, as

> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the

6

parent or parents or a guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or a guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child; . . . .

Tenn. Code Ann. § 36-1-102(1)(A)(i).[8] A central inquiry a court must make when determining whether a parent abandoned its child pursuant to section 36-1-102(1)(A) is whether the abandonment was willful. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i); *see also **In re Audrey S.***, 182 S.W.3d 838, 863–64 (Tenn. Ct. App. 2005) (discussing this Court's interpretation of "willfulness"). For purposes of this case, the burden is on the petitioner to prove willfulness. *See **In re: Leroy H.***, No. M2017-02273-COA-R3-PT, 2018 WL 3700917, at *8 (Tenn. Ct. App. Aug. 3, 2018) (discussing the burden to show willfulness); ***In re Matthew T.***, No. M2015-00486-COA-R3-PT, 2016 WL 1621076, at *17 (Tenn. Ct. App. Apr. 20, 2016) (holding that the petitioner failed to meet its burden to show that the parent's failure to support was willful). "'Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment, however, is a question of law.'" ***In re Navada***, 498 S.W.3d at 593 (quoting ***In re Adoption of Angela E.***, 182 S.W.3d at 640).

---

[8] In 2018, the Tennessee General Assembly saw fit to amend our termination of parental rights statutes to remove the element of willfulness from the definition of abandonment by failure to support or visit. See Tenn. Code Ann. § 36-1-102(1)(A)(i) (defining abandonment as, inter alia, "[f]or a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child"). Rather than include willfulness as an element of the ground, Tennessee Code Annotated section 36-1-102(1) now provides that it is an affirmative defense:

> For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure[.]

Tenn. Code Ann. § 36-1-102(1)(I), *enacted by* 2018 Tennessee Laws Pub. Ch. 875 (H.B. 1856), *eff.* July 1, 2018. We have previously held that this change will not apply retroactively. *See **In re Gabriel B.***, No. W2017-02514-COA-R3-PT, 2018 WL 3532078, at *4 (Tenn. Ct. App. July 23, 2018) (citing ***In re D.A.H.***, 142 S.W.3d 267, 273 (Tenn. 2004)) ("Because this change is substantive rather than procedural or remedial, however, the amended statute will not be applied retroactively to this case."). As such, we apply the version of the statute at issue when the case was initiated.

In order to satisfy section 36-1-102(1)(A)(i), a party must prove that the parent has "willfully failed to support or ha[s] willfully failed to make reasonable payments toward the support of the child." Tenn. Code Ann. § 36-1-102(A)(1)(i). "Willful failure to support or to make reasonable payments toward support means 'the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child.'" *In re Adoption of Angela E.*, 402 S.W.3d at 640 (quoting Tenn. Code Ann. § 36-1-102(1)(D)). "Failure to visit or support a child is 'willful' when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *In re Audrey S.*, 182 S.W.3d at 864 (citing *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004)). If a parent is financially unable to support a child, then the failure to support is not willful. *Id.* at 824 fn.33. Token support, however, does not prevent a court from finding willful failure to support. *In re Adoption of Angela E.*, 402 S.W.3d at 641. Token support is defined as support "under the circumstances of the individual case, is insignificant given the parents means[.]" Tenn. Code Ann. § 36-1-102(B). We note that in the present case, the relevant four-month period is April 4, 2017 through August 3, 2017.

Turning to the present case, the trial court made the following findings in addressing Appellants' alleged failure to support the child:

> The Court finds that [Appellees] have successfully proven by clear and convincing evidence that pursuant to Tennessee Code Annotated §36-1-102(1)(A) and Tennessee Code Annotated §36-1-102(1)(D), [Appellants] have willfully failed to support and have willfully failed to make reasonable payments toward the support of the minor child. The Court finds that the Father has had the ability to pay support because he receives a check each month and has never even offered to pay anything for the support of his child, nor has he provided necessities as in-kind support. The Court finds that the Mother has had the ability to pay support from her cash paying job babysitting and has never offered to pay anything for the support of her child, nor has she provided necessities as in-kind support.

There is no dispute in this case that Appellants paid no support for the child during the relevant four-month period. Rather, Appellants aver that Appellees did not prove by clear and convincing evidence that their lack of support for the child was willful. Specifically, Appellants point out that Mother's testimony at trial revealed that she and Father subsist on the following income each month: $700.00 in social security and disability for Father, $192.00 in food stamps for Mother, $115.00 in food stamps for Father, and occasionally $100.00-$120.00 in babysitting money earned by Mother. The evidence with regard to the babysitting income, however, was unclear, as Mother acknowledged that she does not do this every week and it is not a fixed source of income.

Indeed, Mother testified that she did not remember babysitting during the relevant four-month period.

With regard to expenses, the evidence reflects that rent accounts for a large portion of Mother's and Father's income, as their rent is currently $600.00 per month, including utilities. Other expenses include Mother's Subutex, which is $420.00 per month, $25.00 per month for cigarettes, and court costs that Mother and Father contribute to every three months. Mother also testified that she is saving money to get a driver's license and a car so that she can return to work. As such, Appellants maintain on appeal that they were simply unable to remit child support during the relevant time period.

In contrast, Appellees assert that because Mother and Father's expenses exceed their monthly income, they must be receiving some other undisclosed income that should have gone towards child support. Appellees also contend that Mother and Father should have put the money they spend on cigarettes and Subutex towards the support of the child.

We remain mindful that "if a parent is financially unable to support a child, then the failure to support is not willful." *In re Audrey S.*, 182 S.W.3d at 824 fn.33. Having reviewed the record, we tend to agree that Appellees have not offered clear and convincing evidence that Mother and Father's failure to provide child support during the relevant time period was willful. Simple math reflects that Mother and Father's monthly expenses exceed their income. The trial court's assertion that Father "had the ability to pay support because he receives a check each month" completely ignores the fact that Mother and Father's expenses subsume what little income they currently have, even taking into account Mother's occasional earnings from sporadic babysitting jobs.[9] Although the trial court found it persuasive, we cannot say that Mother's inconsistent babysitting income amounts to clear and convincing evidence that Appellants' failure to pay child support was willful. Clear and convincing evidence should "eliminate any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

Here, we have serious doubt that Mother and Father are left with surplus funds at the end of each month and that they intentionally withheld those funds from the child. Although the Appellees suggest that the Appellants receive "under the table" income from some unknown source, Appellees offer no evidence to support this contention, despite fact that the burden is on the petitioner to prove willfulness. *See In re: Leroy H.*, No. M2017-02273-COA-R3-PT, 2018 WL 3700917, at *8 (Tenn. Ct. App. Aug. 3, 2018) (discussing the burden to show willfulness); *In re Matthew T.*, No. M2015-00486-COA-R3-PT, 2016 WL 1621076, at *17 (Tenn. Ct. App. Apr. 20, 2016) (holding that the

---

[9] We note that this income is likely not even at issue given that Mother testified that she did not recall performing this job during the relevant time period.

petitioner failed to meet its burden to show that the parent's failure to support was willful). Moreover, the trial court made no findings that Appellants somehow earned more income than reported at trial. As such, Appellees argument in this regard amounts to nothing more than speculation and innuendo. *Cf.* ***Runyon v. Runyon***, No. W2013-02651-COA-T10B, 2014 WL 1285729, at *9 (Tenn. Ct. App. Mar. 31, 2014) (noting that allegations "must be based on facts, not speculation or innuendo").

We are also not persuaded by the Appellees' argument that Mother should have offered the money she spends on Subutex or cigarettes as child support. Although we agree that the cigarette purchases are certainly not to Mother and Father's credit, their expenses would still subsume their income even without this small, frivolous purchase.[10] Moreover, Mother's Subutex is part and parcel to her apparently hard-fought rehabilitation. We are simply not convinced that this drug regimen is not a necessary expense under these circumstances, especially considering that rehabilitation and the follow-up recommendations therefrom were part of the requirements set forth for Mother in juvenile court in order to maintain visitation with the child. To now find that Mother's choice to spend Appellants' rather meager monthly income on this medication essentially places Mother in an untenable Catch-22.

Appellees next contend that because Mother and Father have both worked in the past, their current unemployment is willful. Specifically, Appellees point out that Father was previously employed by the Volunteer Blind Agency, and that in the past, Mother has worked in various fast-food restaurants. In support, Appellees rely on an unpublished case in which this Court determined that the father's failure to remit child support was indeed willful, despite the fact that the father had cerebral palsy and received a social security allocation. *See* ***In re Bryson F.***, No. E2016-01303-COA-R3-PT, 2017 WL 3017283, at *1 (Tenn. Ct. App. July 17, 2017). There are, however, significant factual differences in ***In re Bryson F.*** and the case at bar. While the father in ***Bryson F.*** was also disabled, the petitioners in that case offered ample proof that father held several jobs,

---

[10] We acknowledge that in previous cases, a parent's decision to purchase cigarettes rather than remit child support has weighed against the parent in deciding whether the parent willfully failed to support the child. *Cf.* ***In re Morgan K.***, No. M2018-00040-COA-R3-PT, 2018 WL 5733291, at *4 (Tenn. Ct. App. Oct. 31, 2018) (concluding that father willfully failed to support his child where he purchased two packs of cigarettes daily but also claimed that he could not work due to severe COPD; father also had zero expenses as he was entirely supported by family, and as such there was no evidence that father's income was subsumed by necessary expenses). In the present case, however, Appellants' income would be subsumed by living expenses with or without their monthly cigarette purchase. Moreover, a total expense of $25.00 each month, for two people, ultimately amounts to approximately $3.00 per week per person. We simply cannot say that in the present case, Appellants' choice to spend $3.00 per week on one frivolous item amounts to clear and convincing evidence of willful failure to support the child. Under different circumstances, and coupled with stronger additional evidence, this type of purchase might carry more weight in favor of a finding of willfulness. Here, however, we cannot say that Appellees' reliance on this minor detail amounts to clear and convincing evidence that Appellants willfully withheld support from their child.

10

some during the relevant four-month period, and nonetheless refused to remit child support because he felt that it was "not his responsibility". *Id.* at \*3. Moreover, the petitioners offered proof that father's mother helped support him financially, and that father maintained a cable subscription that cost $140 per month. *Id.* Notably, the father in **Bryson F.** also refused the mother's requests to seek a social security allocation for the child, and would frequently tell the mother that purchasing items for the child was her responsibility rather than his. *Id.* Simply put, there was significant evidence in **Bryson F.** that father had money for child support at his disposal, yet expressly refused to provide it to the child in spite of mother's requests for help.

Similarly, Appellees argue that Mother's unemployment is due in large part to her past criminal record, and that "nobody made [Mother] commit the crimes that led to her convictions." Consequently, Appellees aver that Mother's lack of employment serves as clear and convincing evidence that Mother willfully failed to support the child, especially in light of the fact that Mother has been able to hold a job in the past.

Appellees' argument is unavailing, and we cannot conclude that Appellees satisfied their burden by offering evidence that Mother and Father have been employed in the past. With regard to Father, the only evidence offered was the testimony of Appellees that Father had, at some point in his life, been employed at the Volunteer Blind Agency. It is completely unclear when this was or why Father is no longer employed there and instead receives disability. Appellees concede, however, that Father's eye disease is degenerative and is likely to eventually take his eye sight. Given the nature of Father's condition, evidence that Father was able to work at some point in the past is simply not evidence that Father was able to work during the four-month period. Rather, Father's undisputed disability appears to provide a justifiable excuse for his lack of employment. *See* ***In re Adoption of Angela E.***, 402 S.W.3d at 641.

Further, Mother testified that although she has had difficulty in finding a job, she has applied for jobs and had two job interviews during the relevant four-month period. Mother also testified that she tries every month to save money for a driver's license and a car so that her job search will be easier in the future.[11] Accordingly, it seems that Mother did in fact take concrete steps towards employment during the relevant four-month period and was simply unsuccessful. Appellees do not dispute Mother's testimony on this issue. We have previously concluded that the record lacked clear convincing evidence that a parent's failure to support was willful where, *inter alia*, the parent testified that her inability to obtain employment stemmed from her criminal history. *See* ***In re Noah B.B.***, No. E2014-01676-COA-R3PT, 2015 WL 1186018, at \*8 (Tenn. Ct. App. Mar. 12, 2015) ("[Mother] said her criminal charges served as a barrier to finding employment because

---

[11] There is no evidence in the record, however, that Mother has been successful in this endeavor or currently has any savings.

11

potential employers discovered her criminal history when they ran a background check.").

Based on the foregoing, we conclude that Appellees did not satisfy their burden in showing that Mother and Father's failure to provide support for Nevaeh during the relevant period was willful. Indeed, the evidence reflects that while Mother and Father continue to take commendable steps in the right direction, they are still faced with significant financial hardship. Appellees have not offered sufficient evidence to convince us that this financial hardship is within Mother and Father's control at this juncture, nor have they shown that Appellants' decision to spend approximately $25.00 per month on frivolities is clear and convincing evidence that Appellants' willfully failed to support their child. As no ground supports termination, we need not proceed to consider whether termination is in the child's best interest. Any argument that termination was not appropriate in the absence of a home study is therefore pretermitted.[12]

## Conclusion

The order of the Hawkins County Chancery Court terminating the parental rights of Christine N. and Bradley N. is hereby reversed. This matter is hereby remanded for further proceedings consistent with this Opinion, and costs of this appeal are taxed to the Appellees, Katrina H. and Scotty H., for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

---

[12] In addition to this argument, Appellants also argue that Appellees should not have been named guardians of the child. From our review of the record, however, the order changing custody from Great Aunt to Appellants was entered in the dependency and neglect action before the Hawkins County Juvenile Court, rather than before the trial court in the termination proceeding. Dependency and neglect proceedings are separate and distinct from termination of parental rights proceedings. See *In re Jimmy B.*, No. E2015-02070-COA-R3-PT, 2016 WL 2859180, at *6 (Tenn. Ct. App. May 11, 2016) (noting that the dependency and neglect proceeding and termination of parental rights proceeding are "separate proceeding[s]"); *In re L.A.J., III*, No. W2007-00926-COA-R3-PT, 2007 WL 3379785, at *6 (Tenn. Ct. App. Nov. 15, 2007) ("The dependency and neglect proceedings, however, are separate and distinct from the termination proceedings."). This appeal results from the final judgment in the termination proceeding. As such, we are simply not permitted to review orders entered in other actions. Should Appellants wish to challenge the decision of the Hawkins County Juvenile Court, they must do so by filing an appropriate pleading or timely appeal of that court's decision.